Emma A. O. Bruden, OSB #163525
Kampmeier & Knutsen, PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 719-5641
Email: emma@kampmeierknutsen.com

*Attorneys for Plaintiff Northwest Environmental Defense Center*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DA YANG SEAFOOD, INCORPORATED, a foreign business corporation,<br><br>Defendant. | Case No. 3:26-cv-01430<br><br>COMPLAINT<br><br>Federal Clean Water Act<br>(28 U.S.C. § 1331 and 33 U.S.C. § 1365(a)) |

## I.    INTRODUCTION

1.    This is a Clean Water Act ("CWA" or "Act") citizen suit brought under Section 505 of the Act, 33 U.S.C. § 1365, as amended. Plaintiff Northwest Environmental Defense Center ("NEDC") seeks declaratory and injunctive relief, the imposition of civil penalties, and an

COMPLAINT – 1

award of costs, including attorneys' and expert witness fees, for Defendant Da Yang Seafood, Incorporated's ("Da Yang" or "Defendant") repeated and ongoing violations of Section 301(a) of the Act, 33 U.S.C. § 1311(a). Specifically, NEDC alleges Da Yang is violating the CWA by discharging pollutants to waters of the United States without authorization of a National Pollutant Discharge Elimination System ("NPDES") permit. *See* 33 U.S.C. §§ 1311(a), 1342.

## II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a) (CWA citizen suit provision), and 28 U.S.C. § 1331 (federal question jurisdiction). Defendant is in ongoing violation of an "effluent standard or limitation" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f). The requested relief is authorized by Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and by 28 U.S.C. §§ 2201 and 2202.

3.     NEDC satisfied the jurisdictional requirements for bringing this lawsuit. In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), by letter dated, sent via certified mail, and postmarked April 29, 2026, NEDC notified Da Yang of its alleged violations of the CWA and of NEDC's intent to sue for those violations ("Notice Letter"). NEDC also notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Oregon Department of Environmental Quality ("ODEQ") of its intent to sue Da Yang by mailing a copy of the Notice Letter to those officials on April 29, 2026. A copy of the Notice Letter is attached to this Complaint as Exhibit 1, and the allegations therein are hereby incorporated by reference.

4.     At the time of the filing of this Complaint, more than sixty days have passed since NEDC mailed the Notice Letter to the recipients as described in the preceding paragraph. At the time of the filing of this Complaint, neither EPA nor ODEQ has commenced any action

COMPLAINT – 2

constituting diligent prosecution to redress the violations alleged in the Notice Letter. The alleged CWA violations complained of herein are continuing or reasonably likely to recur and Da Yang is in ongoing violation of the CWA.

5.    Venue is proper in this District under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the unlawful discharges is located in Clatsop County, Oregon.

6.    A copy of this Complaint will be served on the Attorney General of the United States, the Administrator of EPA, and the Administrator of EPA Region 10, as required by Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4.

### III.    PARTIES

7.    Plaintiff Northwest Environmental Defense Center is a membership organization suing on behalf of itself and its members. NEDC is an independent non-profit corporation organized and existing under the laws of the State of Oregon. NEDC maintains its principal place of business in Multnomah County, Oregon. Since 1969, the staff, student volunteers, and members of NEDC have advocated for cleaner water and air and for the preservation of public lands and wildlife habitat across the Pacific Northwest.

8.    The mission of NEDC is to preserve and protect the natural environment of the Pacific Northwest. NEDC and its members have a particular interest in, and derive aesthetic, recreational, and other benefits from, Oregon's rivers, streams, lakes, and bays, including the Columbia River Basin. NEDC and its members also have a particular interest in, and derive aesthetic, recreational, and other benefits from, the aquatic species that use and rely on those waters. NEDC and its members also work to conserve and protect Oregon's water resources and aquatic species. NEDC's members use waters and land near Defendant's discharges, including

COMPLAINT – 3

within and around the West Basin Marina, the Astoria Riverwalk, and Youngs Bay, for recreational and other activities including boating, paddling, fishing, nature watching, hiking, and aesthetic enjoyment. Additionally, many members of NEDC live or work near the Columbia River Basin. NEDC and its members intend to continue these activities in the future.

9.     NEDC has representational standing to bring this lawsuit. NEDC and its members are "citizens" as defined by Section 505(g) of the Act, 33 U.S.C. § 1365(g). NEDC has at least one member who is injured by Defendant's discharges of polluted wastewater and by Defendant's failure to comply with the CWA. Recreational, economic, aesthetic, conservation, health, and/or other interests of NEDC and its members have been, are being, and will be adversely affected by Defendant's violations of the CWA and unauthorized discharges of polluted wastewater to the Columbia River. At least one of NEDC's members recreates downstream of Defendant's facility in Youngs Bay. At least one of NEDC's members recreates throughout the West Basin Marina adjacent to Defendant's facility. And at least one of NEDC's members recreates along the Astoria Riverwalk, including near and downstream of Defendant's facility.

10.     NEDC's member(s) that use the waterbodies in the vicinity and downstream of Defendant's facility suffer cognizable injuries as a result of the CWA violations alleged herein. For example, they suffer diminished enjoyment of their recreational experiences due to the knowledge that Defendant's polluted wastewater is or may be adversely affecting water quality or the environmental conditions that aquatic species rely upon. NEDC's and its members' interests in the Columbia River in the vicinity and downstream of Defendant's discharges are diminished by its polluted state and by Defendant's CWA violations. These injuries are fairly

COMPLAINT – 4

traceable to the alleged conduct challenged herein. The relief sought in this lawsuit can redress the injuries to those interests.

11.    NEDC has organizational standing to bring this action. NEDC's organizational interests include protecting public health and water quality for the benefit of its members and the general public. NEDC frequently engages in public education to increase awareness of water quality issues; administrative advocacy to improve implementation and enforcement of the CWA; and—when necessary—litigation against facilities that are discharging pollution without an NPDES permit or are violating the terms of their permit. Specifically, NEDC has been actively engaged in a variety of advocacy efforts to improve water quality in, and to address sources of water quality degradation throughout, the Columbia River Basin. NEDC's organizational interests have been adversely affected by Defendant's CWA violations. For example, if Defendant had obtained an NPDES permit for its discharges of pollutants, including wastewater, NEDC would have had knowledge of the effluent limitations applicable to Defendant's discharges and access to the monitoring and reporting information required by the permit. Because Defendant discharges without a permit, NEDC is deprived of information that would further its efforts to serve its members by disseminating information and taking appropriate action to improve water quality in the vicinity of Defendant's facility. NEDC's efforts to educate and advocate for greater environmental protection for the benefit of its members are thereby hindered. These injuries are fairly traceable to Defendant's violations and are redressable by this Court.

12.    Defendant Da Yang Seafood, Incorporated, is a corporation incorporated in the State of Washington and authorized to do business under the laws of the State of Oregon. Da Yang owns and operates a seafood offloading and processing facility at or about Port of Astoria,

COMPLAINT – 5

Building A, Warehouse 2, in Astoria, Oregon 97103 (hereinafter the "Facility"). The address for the Facility is also sometimes listed as 45 Pier 2, Building A, Astoria, Oregon 97103. Da Yang's Facility discharges wastewater associated with seafood processing and offloading activity, and pollutants contained therein, to the Columbia River without an NPDES permit that authorizes those discharges.

## IV.    LEGAL BACKGROUND

13.    Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless the discharge is authorized by and in compliance with the Act, including through an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

15.    The Act defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

16.    The Act defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id*. § 1362(14).

17.    The Act defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id.* § 1362(6).

COMPLAINT – 6

18.     The Act's prohibition on discharging pollutants from point sources applies broadly. The Act defines the term "navigable waters" to mean "the waters of the United States, including the territorial seas." *Id.* § 1362(7). And the Act defines the term "person" to mean "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* § 1362(5).

19.     The State of Oregon has an approved state NPDES permit program administered by ODEQ. Or. Admin. Rule ch. 340-045. EPA approved ODEQ's NPDES permit program pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

20.     Discharging pollutants without the required NPDES permit is grounds for a citizen enforcement action. 33 U.S.C. 1365(a)(1), (f). The CWA authorizes any citizen to commence a civil action against any person—including any company—that is alleged to be in violation of an "effluent standard or limitation" under the CWA. *Id.* §§ 1362(5), 1365(a). The CWA then defines the term "effluent standard or limitation" to include "an unlawful act" under Section 301(a) of the Act, 33 U.S.C. § 1311(a). *Id.* § 1365(f). Discharging pollutants without an NPDES permit, and discharging pollutants in violation of an NPDES permit, *both* violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a) ("Except as in compliance with this section and sections [1312, 1316, 1317, 1328, 1342, and 1344] of this Act, the discharge of any pollutant by any person shall be unlawful.").

## V.     FACTS

21.     Da Yang unloads and processes several types of seafood—including shrimp, anchovy, crab, squid, bottomfish, salmon, whiting, rockfish, mackerel, skate wing, sardines, and thornyhead—at the Facility.

COMPLAINT – 7

22.     The Facility is located on Pier 2 of the Port of Astoria, which is over the Columbia River.

23.     Da Yang has discharged and continues to discharge treated and untreated wastewater, and pollutants therein—including seafood processing wastewater, biochemical oxygen demand, suspended solids, oil, grease, chlorine, ammonia, nitrogen, phosphorous, dissolved inorganic arsenic and other forms of arsenic, copper, mercury, zinc, enterococci, *e. coli*, and other bacteria, pH or wastewater that is too acidic or basic, heat, biological materials from seafood processing and other activities, salts, cleaning agents and materials, stormwater, and other solid and chemical wastes—from the Facility via Pier 2, Outfall 001, and other point sources at the Facility to the Columbia River each and every day since May 14, 2021, that any such discharges flowed from the Facility and all related infrastructure.

24.     Outfall 001 and Da Yang's Facility, processing areas, facility structures and equipment, and other machinery are point sources as that term is defined by the CWA.

25.     Da Yang's wastewater, and pollutants therein, are pollutants as that term is defined by the CWA.

26.     The Columbia River is a navigable water. The Columbia River is a "water of the United States" as defined by the CWA and its implementing regulations.

27.     Da Yang does not have an NPDES permit that authorizes it to discharge pollutants or wastewater to the Columbia River from the Facility or its related infrastructure.

28.     Da Yang knows or should have known that discharges of pollutants or wastewater to the Columbia River without an NPDES permit violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

COMPLAINT – 8

29. The violations alleged herein are ongoing—they are continuing or are reasonably likely to recur—because Da Yang continues to operate the Facility and continues to discharge pollutants from the Facility, including its related infrastructure, to the Columbia River without an NPDES permit that authorizes the discharges. The violations alleged herein are continuing or are reasonably likely to recur because Da Yang has been operating its Facility and discharging wastewater without an NPDES permit since 2006. This decades-long pattern and practice of violating the CWA indicates such violations are likely to recur. The violations alleged herein are continuing or are reasonably likely to recur because, while Da Yang does not have coverage under any NPDES permit, including any iteration of the ODEQ 900-J Seafood Processing General NPDES Permit, Da Yang regularly violates the terms and conditions, including numeric effluent limitations, of the 2006 900-J Seafood Processing General Permit. This indicates Da Yang is unable to operate the Facility in compliance with the terms and conditions of an NPDES permit.

30. Discharges from Da Yang's Facility contribute to the polluted conditions of the waters of the United States, including the Columbia River. Discharges from Da Yang's Facility contribute to the ecological impacts that result from the polluted condition of these waters and to NEDC's and its members' injuries resulting therefrom.

31. The vicinity of the Facility's discharges is used by the citizens of Oregon and visitors, including at least one of NEDC's members, for activities including swimming, boating, paddling, biking, running, fishing, and nature watching. NEDC's member(s) also derive(s) aesthetic benefits from the receiving waters. NEDC's members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Da Yang's contributions to such a polluted state.

COMPLAINT – 9

32.    A significant penalty should be imposed against Da Yang under the penalty factors set forth in Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

33.    Da Yang's violations were avoidable had Da Yang been diligent in overseeing the Facility's operations, maintenance, and compliance with the law.

34.    Da Yang has benefited economically as a consequence of its violations of the CWA and its failure to obtain an NPDES permit.

35.    Without the imposition of appropriate civil penalties and the issuance of an injunction, Da Yang is likely to continue to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), to the further injury of NEDC, its members, and the public.

## VI.    CLAIMS FOR RELIEF

36.    NEDC hereby incorporates by reference each of the preceding paragraphs herein, as well as the allegations in the Notice Letter that is attached hereto as Exhibit 1.

37.    Defendant's discharges of pollutants from the Facility to the Columbia River and waters of the United States, as described herein and in the Notice Letter, violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and constitute violations of an "effluent standard or limitation" as that phrase is defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f). These violations have occurred on each and every day that Defendant has discharged pollutants from the Facility in the manners described herein and in the Notice Letter since May 14, 2021.

38.    Defendant's CWA violations are continuing or are reasonably likely to recur. Any and all additional discharges of pollutants in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), that occur after the date of NEDC's Notice Letter, but before a final decision in this action, are continuing violations subject to this Complaint.

## VII.    REQUEST FOR RELIEF

COMPLAINT – 10

WHEREFORE, Plaintiff NEDC respectfully requests that this Court grant the following relief:

A.      Declare that Defendant has violated and continues to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), as alleged herein;

B.      Enjoin Defendant from operating the Facility in a manner that results in further violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a);

C.      Enjoin Defendant from discharging pollutants from the Facility unless and until it obtains an NPDES permit authorizing such discharges;

D.      Order Defendant to provide NEDC, for a period beginning on the date of the Court's Order and running for two years after, with copies of all reports and other documents that Defendant submits to or receives from ODEQ or EPA regarding discharges of pollutants from the Facility, at the time the reports or documents are submitted to or received from those authorities;

E.      Order Defendant to take specific actions to remediate the environmental harm caused by any violations;

F.      Grant such other preliminary and permanent injunctive relief as NEDC may from time to time request during the pendency of this case;

G.      Order Defendant to pay civil penalties as authorized by Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

H.      Award NEDC its litigation expenses, including costs and reasonable attorneys' and expert fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), or as otherwise authorized by law; and

I.      Order such other relief as may be just and proper.

COMPLAINT – 11

Respectfully submitted this 13th day of July 2026.

Kampmeier & Knutsen, PLLC

By: s/ Emma A. O. Bruden
     Emma A. O. Bruden, OSB #163525
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 719-5641
Email: emma@kampmeierknutsen.com

*Attorneys for Plaintiff*
*Northwest Environmental Defense Center*

COMPLAINT – 12

# Exhibit 1

**CERTIFICATE OF SERVICE**

I, Paul A. Kampmeier, declare under penalty of perjury of the laws of the State of Washington and the United States that I am counsel for Northwest Environmental Defense Center and that on April 29, 2026, I caused copies of the attached Notice of Intent to Sue Under the Clean Water Act to be served on the following by depositing packages addressed as follows with the United States Postal Service, certified mail, postage prepaid, return receipt requested:

Managing Agent
Da Yang Seafood, Incorporated
45 Pier 2, Building A
Astoria, Oregon 97103

Managing Agent
Da Yang Seafood, Incorporated
Port of Astoria, Building A, Warehouse 2
Astoria, Oregon 97103

Chang Lee
Registered Agent for Da Yang Seafood, Incorporated
45 Pier 2, Building A
Astoria, Oregon 97103

Administrator Lee M. Zeldin
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
(Mail Code 1101 A)
Washington, D.C. 20460

Regional Administrator Emma Pokon
U.S. EPA, Region 10
1200 Sixth Avenue, Suite 155
Seattle, Washington 98101

Leah Feldon, Director
Oregon Department of Envtl. Quality
700 NE Multnomah Street, Suite 600
Portland, Oregon 97232

EXECUTED this 29th day of April 2026 at Seattle, Washington.

By: _____
Paul A. Kampmeier, WSBA No. 31560

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

ERICA L. PROULX
Licensed in Washington
206.739.5184
erica@kampmeierknutsen.com

April 29, 2026

*Via Certified Mail — Return Receipt Requested*

Managing Agent
Da Yang Seafood, Incorporated
45 Pier 2, Building A
Astoria, Oregon 97103

Managing Agent
Da Yang Seafood, Incorporated
Port of Astoria, Building A, Warehouse 2
Astoria, Oregon 97103

**Re:      Notice of Intent to File Suit Under the Clean Water Act.**

Dear Managing Agent:

This letter provides Da Yang Seafood, Incorporated ("Da Yang") with sixty days' notice of the Northwest Environmental Defense Center's intent to file a citizen lawsuit against it under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for the Clean Water Act violations alleged and described in this letter. The Northwest Environmental Defense Center ("NEDC") is a non-profit organization dedicated to protecting the natural environment of the Pacific Northwest. Kampmeier & Knutsen, PLLC, and NEDC Staff Attorney Mary Stites represent NEDC in this matter. Any response to this notice of intent to sue should be directed to Kampmeier & Knutsen, PLLC, at the address below.

This notice letter pertains to the Da Yang facility located at the Port of Astoria, Building A, Warehouse 2, in Astoria, Oregon 97103 (hereinafter "the Facility"). The address for the Facility is also sometimes listed as 45 Pier 2, Building A, Astoria, Oregon 97103. As explained in more detail below, Da Yang has violated and continues to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants from the Facility to waters of the United States without authorization of a National Pollutant Discharge Elimination System ("NPDES") permit. Such discharges are illegal, and ongoing, and so subject to citizen enforcement under the Clean Water Act ("CWA" or "Act").

Accordingly, unless Da Yang fully and promptly resolves its CWA violations to NEDC's satisfaction, NEDC will file a citizen lawsuit against Da Yang in U.S. District Court immediately following the expiration of the sixty-day notice period that is commenced with this notice letter. NEDC intends to sue for all violations, including those discovered after the date of this notice letter and those occurring after NEDC files a complaint in court. NEDC intends to seek injunctive relief, civil penalties of up to $68,445 per day for each violation of the CWA, and recovery of NEDC's costs of litigation including its attorneys' fees, as authorized by the CWA. *See* 33 U.S.C. § 1365(a), (d).

## I.     ALLEGED VIOLATIONS OF CWA SECTION 301(a), 33 U.S.C. § 1311(a).

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985. *Id.* § 1251(a)(1). Section 301(a) of the CWA, 33 U.S.C. § 1311(a)—the heart of the statute—prohibits discharges of pollutants to waters of the United States unless they are authorized by and in compliance with an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

Discharges of pollutants without an NPDES permit, and discharges of pollutants that do not comply with an NPDES permit, both violate Section 301(a) of the Act, 33 U.S.C. 1311(a). Section 301(a) states: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). Section 402 of the Act, 33 U.S.C. § 1342, establishes the NPDES permit program. And Section 402(k) of the Act, 33 U.S.C. § 1342(k), states in part that: "Compliance with a permit issued pursuant to this section shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1312, 1316, 1317, and 1343 of this title . . . ." Accordingly, a facility that discharges pollutants in compliance with an NPDES permit is in compliance with Section 301(a) of the Act. But facilities that discharge pollutants without an NPDES permit, and facilities that discharge pollutants in violation of an NPDES permit, both violate Section 301(a) of the Act.

### A.     Discharging Pollutants to Waters of the U.S. Without an NPDES Permit.

Da Yang has violated and continues to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States without authorization of an NPDES permit. Specifically, every day, Da Yang discharges pollutants—including seafood processing wastewater, biochemical oxygen demand, suspended solids, oil, grease, chlorine, ammonia, nitrogen, phosphorous, dissolved inorganic arsenic and other forms of arsenic, copper, mercury, zinc, enterococci, *e. coli*, and other bacteria, pH or wastewater that is too acidic or basic, heat, biological materials leftover from seafood processing and other activities, salts, cleaning agents and materials, stormwater, and other solid wastes and chemical wastes—from Pier 2, Outfall 1, and other point sources at the Facility to the Columbia River. These illegal discharges have occurred each and every day since April 29, 2021, and are ongoing. Da Yang is in ongoing violation of an "effluent standard or limitation" under the CWA. 33 U.S.C. § 1365(a)(1).

### B.     Discharging Pollutants in Violation of the 900-J General Permit.

Da Yang does not have coverage under the 900-J Seafood Processing General NPDES Permit (the "900-J Permit"). But even if Da Yang obtains coverage under the 900-J Permit, or some other NPDES permit, it would almost surely continue to be in ongoing violation of Section 301(a) of the CWA because Da Yang has a decades-long pattern and practice of violating the CWA that goes back to 2006. The prior tenant at the Facility had coverage under the 900-J

2

Permit, but that coverage terminated on June 30, 2006, without transferring to Da Yang. In 2015, the Oregon Department of Environmental Quality ("DEQ") notified Da Yang that pollutant discharges from the Facility are illegal because Da Yang does not have an NPDES permit. DEQ also stated it would "conditionally refrain" from enforcement actions against Da Yang if Da Yang sought and obtained an individual NPDES permit for the Facility and, in the interim, complied with the 900-J Permit. Da Yang applied for an NPDES permit in 2015 but still has not obtained a permit for the Facility. Moreover, Da Yang has regularly violated the 900-J Permit since 2015.

For example, Schedule A of the 900-J Permit requires wastewater discharges from seafood processing facilities to comply with numeric effluent limitations that limit the amount of pollution discharged to waters of the United States. The table that is attached hereto as Appendix A sets forth monitoring data that Da Yang submitted to DEQ over the last several years and demonstrates that Da Yang has repeatedly violated the effluent limitations in the 900-J Permit.

NEDC believes Da Yang has also regularly violated many other conditions in the 900-J Permit. For example, Da Yang violated Schedule B.3 of the 900-J Permit by failing to timely submit discharge monitoring reports to DEQ for July 2021, December 2022, and October 2024. And based on the limited evidence available to NEDC at this time, NEDC believes Da Yang has regularly violated Schedule F.A3 of the 900-J Permit, which requires covered facilities to take all reasonable steps to prevent discharges in violation of that permit; Schedule F.A6 of the 900-J Permit, by discharging ammonia and chlorine above the levels set forth in the relevant Oregon Administrative Rules (Section 340-041-8033); Schedule F.B1 of the 900-J Permit, which requires covered facilities to at all times properly operate and maintain all facilities and systems of treatment and control that are installed or used to achieve compliance with the 900-J Permit; Schedule F.B2 of the 900-J Permit, which requires covered facilities to halt or reduce activity upon noncompliance with the Permit caused by reduction, loss, or failure of the treatment facility; and Schedules F.D4, F.D5, and F.D6 of the 900-J Permit, which require covered facilities to take certain specified actions when they violate or are unable to comply with permit requirements. In other words, even if Da Yang *had been* covered by the 900-J Permit, and even if Da Yang obtains an NPDES permit for the Facility now, it would almost surely continue to be in ongoing violation of Section 301(a) of the CWA because Da Yang has a decades-long pattern and practice of violating the CWA that goes back to 2006.

## II.    PERSON GIVING NOTICE.

The full name, address, and telephone number of the party giving notice is:

Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726

## III.    ATTORNEYS REPRESENTING NEDC.

The attorneys representing Northwest Environmental Defense Center in this matter are:

Erica Proulx & Paul Kampmeier
Kampmeier & Knutsen, PLLC
705 Second Avenue, Suite 901
Seattle, Washington 98104
Telephone: (206) 858-6983

Emma Bruden
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 719-5641

Mary Stites, Staff Attorney
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726

## IV.    CONCLUSION.

All of the Clean Water Act violations alleged and described in this notice of intent to sue are ongoing. At the conclusion of the 60-day notice period that is commenced with this notice letter, NEDC intends to file a lawsuit against Da Yang Seafood under the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365. Although the above-described violations reflect the information currently available to NEDC, NEDC intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice letter.

Each of the above-described violations subjects Da Yang to civil penalties of up to $68,445 per day. *See* 40 CFR § 19.4. In addition to civil penalties, NEDC will seek injunctive relief to prevent further violations of the CWA and such other relief as is permitted by law, including recovery of NEDC's litigation costs, attorneys' fees, and expert witness fees. *See* 33 U.S.C. § 1365(a), (d).

During the 60-day notice period, NEDC will be willing to discuss effective remedies for the violations described in this letter. If you wish to pursue settlement discussions in lieu of litigation, we suggest you initiate discussions within 10 days of receiving this notice letter so the parties can meet and discuss effective remedies for the violations alleged herein. NEDC does not intend to delay the filing of a complaint if discussions are ongoing when the notice period ends.

Thank you for your prompt attention to this matter.

Sincerely,

Kampmeier & Knutsen PLLC

By: *Erica Proulx*
Erica Proulx

Northwest Environmental Defense Center

By: *Mary Stites*
Mary Stites, Staff Attorney

*Attorneys for Northwest Environmental Defense Center*

4

cc:    Administrator Lee Zeldin, U.S. Environmental Protection Agency
       Regional Administrator Emma Pokon, U.S. EPA Region 10
       Director Leah Feldon, Oregon Department of Environmental Quality
       Chang Lee, Da Yang Seafood, Inc., 45 Pier 2, Building A, Astoria, Oregon 97103

5

# APPENDIX A

| Period of Violation | Parameter | Limit Type | Unit | Sample Result | Limit (2006 900J) |
|---|---|---|---|---|---|
| April 2021 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 11.4 | 5.7 |
| May 2021 | TSS | Monthly Average | lbs/1000-lb of raw product | 21.5 | 15 |
| May 2021 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 112 | 62 |
| May 2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 33.9 | 14 |
| May 2021 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 31.3 | 5.7 |
| June 2021 | TSS | Monthly Average | lbs/1000-lb of raw product | 7.3 | 4.1 |
| June 2021 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 14.4 | 13 |
| June 2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 10 | 4 |
| June 2021 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 5.4 | 1 |
| July 2021 | TSS | Maximum Daily | lbs/1000-lb of raw product | 14.7 | 10.9 |
| July 2021 | TSS | Monthly Average | lbs/1000-lb of raw product | 10.3 | 4.5 |
| July 2021 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 18.5 | 14.7 |

| July 2021 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 2.1 | 1.2 |
|---|---|---|---|---|---|
| 8/3/2021 | TSS | Maximum Daily | lbs/1000-lb of raw product | 14.98 | 8.98 |
| 8/3/2021 | $BOD_5$ | Maximum Daily | lbs/1000-lb of raw product | 38.92 | 28.97 |
| 8/3/2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 6.45 | 2.64 |
| 8/4/2021 | TSS | Maximum Daily | lbs/1000-lb of raw product | 67.71 | 38 |
| 8/4/2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 35.15 | 14 |
| 8/10/2021 | TSS | Maximum Daily | lbs/1000-lb of raw product | 31.97 | 8 |
| 8/10/2021 | $BOD_5$ | Maximum Daily | lbs/1000-lb of raw product | 101.02 | 24.73 |
| 8/10/2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 5.44 | 2.26 |
| 8/17/2021 | TSS | Maximum Daily | lbs/1000-lb of raw product | 61.77 | 26.18 |
| 8/17/2021 | $BOD_5$ | Maximum Daily | lbs/1000-lb of raw product | 128.47 | 103.66 |
| 8/17/2021 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 110.82 | 9.37 |
| August 2021 | TSS | Monthly Average | lbs/1000-lb of raw product | 44.1 | 5.1 |

| August 2021 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 92.9 | 17.3 |
|---|---|---|---|---|---|
| August 2021 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 39.5 | 1.4 |
| 5/18/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 50.42 | 38 |
| 5/23/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 9.69 | 4.27 |
| May 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 36.9 | 9.1 |
| May 2022 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 85.1 | 35.4 |
| May 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 10 | 3.1 |
| June 2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 42.7 | 38 |
| June 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 30.9 | 15 |
| June 2022 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 63.5 | 62 |
| June 2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 47.4 | 14 |
| June 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 23.9 | 5.7 |
| 7/5/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 43.63 | 38 |

| 7/6/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 11.68 | 3.25 |
|---|---|---|---|---|---|
| July 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 25.2 | 6.1 |
| July 2022 | $BOD_5$ | Monthly Average | lbs/1000-lb of raw product | 62.6 | 21.8 |
| July 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 7 | 1.8 |
| 8/3/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 47.79 | 38 |
| 8/3/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 39.68 | 14 |
| 8/4/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 12.28 | 4.02 |
| August 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 29 | 7.4 |
| August 2022 | $BOD_5$ | Monthly Average | lbs/1000-lb of raw product | 47.7 | 27.9 |
| August 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 26 | 2.4 |
| 9/7/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 38.82 | 10.22 |
| 9/7/2022 | $BOD_5$ | Maximum Daily | lbs/1000-lb of raw product | 40.1 | 34.36 |
| 9/7/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 22.3 | 3.13 |

| 9/7/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 39.09 | 10.7 |
|---|---|---|---|---|---|
| 9/7/2022 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 79.46 | 36.43 |
| 9/7/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 29.72 | 3.31 |
| September 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 39 | 4.8 |
| September 2022 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 59.8 | 16.1 |
| September 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 26 | 1.3 |
| 10/5/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 14.29 | 5.3 |
| 10/5/2022 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 182.41 | 13 |
| 10/5/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 1.36 | 1.2 |
| 10/6/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 17.9 | 5.3 |
| 10/6/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 14.19 | 1.2 |
| October 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 16.1 | 2.9 |
| October 2022 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 92.8 | 7.5 |

| October 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 7.8 | 0.5 |
|---|---|---|---|---|---|
| 11/3/2022 | TSS | Maximum Daily | lbs/1000-lb of raw product | 14 | 5.3 |
| 11/3/2022 | $BOD_5$ | Maximum Daily | lbs/1000-lb of raw product | 31.9 | 13 |
| 11/3/2022 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 10.9 | 1.2 |
| November 2022 | TSS | Monthly Average | lbs/1000-lb of raw product | 14 | 2.9 |
| November 2022 | $BOD_5$ | Monthly Average | lbs/1000-lb of raw product | 31.9 | 7.5 |
| November 2022 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 10.9 | 0.5 |
| December 2022 | pH | Monthly Average | lbs/1000-lb of raw product | 9.7 | 6.0 – 9.0 |
| 4/26/23 | TSS | Maximum Daily | lbs/1000-lb of raw product | 55.9 | 38 |
| April 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 55.9 | 15 |
| April 2023 | $BOD_5$ | Monthly Average | lbs/1000-lb of raw product | 63.4 | 62 |
| 5/9/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 42.07 | 38 |
| 5/9/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 19.19 | 14 |

| 5/23/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 60.65 | 38 |
|-----------|-----|---------------|----------------------------|-------|-----|
| 5/23/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 16.1 | 14 |
| May 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 51.4 | 15 |
| May 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 68.2 | 62 |
| May 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 17.6 | 5.7 |
| 6/6/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 21.32 | 14 |
| 6/13/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 25.7 | 16.94 |
| 6/13/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 8.23 | 5.76 |
| June 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 29.8 | 9.2 |
| June 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 68.6 | 35.7 |
| June 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 14.8 | 3.2 |
| 7/20/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 57.39 | 38 |
| 7/20/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 41.45 | 14 |

| 7/27/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 168.11 | 38 |
|---|---|---|---|---|---|
| 7/27/2023 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 361.35 | 155 |
| 7/27/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 125.06 | 14 |
| July 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 112.7 | 15 |
| July 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 234.5 | 62 |
| July 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 83.3 | 5.7 |
| 8/8/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 14.78 | 12.1 |
| 8/8/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 11.3 | 3.86 |
| 8/22/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 16.11 | 3.8 |
| August 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 13 | 5.4 |
| August 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 33.8 | 18.7 |
| August 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 13.7 | 1.5 |
| 9/13/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 26.93 | 14 |

| 9/26/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 21.12 | 14 |
|---|---|---|---|---|---|
| September 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 24.9 | 15 |
| September 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 72.3 | 62 |
| September 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 24 | 5.7 |
| 10/19/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 2.22 | 1.5 |
| 10/19/2023 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 3.05 | 1.2 |
| 10/19/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 0.62 | 0.08 |
| 10/24/2023 | TSS | Maximum Daily | lbs/1000-lb of raw product | 4.22 | 1.5 |
| 10/24/2023 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 9.72 | 1.2 |
| 10/24/2023 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 3.11 | 0.08 |
| October 2023 | TSS | Monthly Average | lbs/1000-lb of raw product | 3.7 | 0.7 |
| October 2023 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 6.4 | 0.7 |
| October 2023 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 1.9 | 0 |

| May 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 315.5 | 8.3 |
|---|---|---|---|---|---|
| May 2024 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 32.1 | 31.9 |
| May 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 6.9 | 2.8 |
| June 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 34.9 | 15 |
| June 2024 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 79.5 | 62 |
| June 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 8.6 | 5.7 |
| 7/23/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 10.98 | 10.4 |
| 7/23/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 8.22 | 3.2 |
| July 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 8.8 | 5 |
| July 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 5.6 | 1.4 |
| 8/6/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 53.02 | 38 |
| 8/6/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 53.81 | 14 |
| 8/7/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 92.65 | 38 |

| 8/7/2024 | BOD$_5$ | Maximum Daily | lbs/1000-lb of raw product | 201.68 | 155 |
|---|---|---|---|---|---|
| 8/7/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 54.52 | 14 |
| August 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 72.8 | 15 |
| August 2024 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 177.6 | 62 |
| August 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 54.2 | 5.7 |
| 9/10/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 41.91 | 38 |
| 9/10/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 40.17 | 14 |
| 9/23/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 38.88 | 37.74 |
| 9/23/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 26.99 | 13.9 |
| September 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 40.4 | 15 |
| September 2024 | BOD$_5$ | Monthly Average | lbs/1000-lb of raw product | 96.9 | 61.8 |
| September 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 33.6 | 5.7 |
| 10/8/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 80.22 | 38 |

| 10/8/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 65.06 | 14 |
|---|---|---|---|---|---|
| 10/9/2024 | TSS | Maximum Daily | lbs/1000-lb of raw product | 45.81 | 38 |
| 10/9/2024 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 70.39 | 14 |
| October 2024 | TSS | Monthly Average | lbs/1000-lb of raw product | 63 | 15 |
| October 2024 | $BOD_5$ | Monthly Average | lbs/1000-lb of raw product | 111.5 | 62 |
| October 2024 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 67.7 | 5.7 |
| May 2025 | TSS | Monthly Average | lbs/1000-lb of raw product | 24.3 | 15 |
| May 2025 | BOD5 | Monthly Average | lbs/1000-lb of raw product | 64.9 | 62 |
| May 2025 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 13.2 | 5.7 |
| 6/17/2025 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 17.76 | 14 |
| 6/18/2025 | TSS | Maximum Daily | lbs/1000-lb of raw product | 21.99 | 21.32 |
| June 2025 | TSS | Monthly Average | lbs/1000-lb of raw product | 20.5 | 10.7 |
| June 2025 | BOD5 | Monthly Average | lbs/1000-lb of raw product | 74.3 | 42.5 |

| June 2025 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 11.7 | 3.8 |
|---|---|---|---|---|---|
| 7/15/2025 | TSS | Maximum Daily | lbs/1000-lb of raw product | 13.06 | 13 |
| 7/15/2025 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 7.74 | 4.22 |
| 7/22/2025 | TSS | Maximum Daily | lbs/1000-lb of raw product | 32.77 | 24.37 |
| 7/22/2025 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 18.27 | 8.66 |
| July 2025 | TSS | Monthly Average | lbs/1000-lb of raw product | 22.9 | 6.9 |
| July 2025 | BOD5 | Monthly Average | lbs/1000-lb of raw product | 58.4 | 25.4 |
| July 2025 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 13 | 2.2 |
| 8/26/2025 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 29.16 | 4.03 |
| 8/27/2025 | Oil & Grease | Maximum Daily | lbs/1000-lb of raw product | 8.25 | 3.76 |
| August 2025 | TSS | Monthly Average | lbs/1000-lb of raw product | 9.8 | 5.5 |
| August 2025 | BOD5 | Monthly Average | lbs/1000-lb of raw product | 23.1 | 19 |
| August 2025 | Oil & Grease | Monthly Average | lbs/1000-lb of raw product | 18.7 | 1.6 |